1
2
3
4
5
6
7                      UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9
BIOGENEX LABORATORIES,                        No. C 09-04210 MHP
10
                Plaintiff,
11                                            **MEMORANDUM & ORDER**
     v.
12                                            **Re: Sentara Healthcare's Motion to Dismiss**
SENTARA HEALTHCARE,                           **for Lack of Personal Jurisdiction, to Dismiss**
13                                            **for Improper Venue (or in the Alternative,**
                Defendant.                    **to Transfer Venue), and to Dismiss for**
14   _____/       **Failure to State a Claim**

15
16          Plaintiff BioGenex Laboratories ("BioGenex"), a California corporation headquartered in

17   California, filed this action against defendant Sentara Healthcare, a Virginia corporation

18   headquartered in Virginia.  Before the court are Sentara's (1) motion to dismiss, pursuant to Federal

19   Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, (2) motion to dismiss, pursuant to

20   Federal Rule of Civil Procedure 12(b)(3), for improper venue, or in the alternative to transfer venue

21   to the Northern District of Virginia, and (3) motion to dismiss BioGenex's third, fourth and fifth

22   claims for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim

23   upon which relief can be granted.  Having considered the arguments of the parties and for the

24   reasons stated below, the court enters the following memorandum and order.

25
26
27
28

**United States District Court**
For the Northern District of California

BACKGROUND

I.      The Agreements Between BioGenex and Sentara

BioGenex manufactures and provides cellular and molecular pathology laboratories with a broad range of reagents, detection kits, antibodies, probes, special stains and automated staining and imaging instrument systems.  Docket No. 1 (Compl.) ¶ 5.  Sentara is a not-for-profit healthcare facility that provides healthcare services to individuals in Southeastern Virginia.  Docket No. 10-1 (Croswhite Aff.) ¶ 1.  On June 29, 2006, BioGenex and Sentara entered into two agreements.  Under the first, the "System Agreement," BioGenex would provide Sentara with seven i6000 Automated Staining System instruments and the supplies necessary to operate those machines in exchange for a promise that Sentara would purchase at least $194,000 of supplies annually for a five-year period. *See* Compl., Exh. A (System Usage and Reagent Supply Binding Agreement ("System Agreement")).  Under the second, the "Service Agreement," BioGenex agreed to maintain the i6000 machines for five years in exchange for monthly payments of $5,200.  *See* Compl., Exh. B (Service and Maintenance Agreement ("Service Agreement")).  The two agreements were the product of arms length negotiations between executives at BioGenex and Sentara.  BioGenex drafted the agreements, but both parties had opportunities to and did in fact alter some of the terms.  *See* Service Agreement at 3-4 (exhibiting initialed interlineations made by Sentara's signatory to the agreement).  On December 29, 2006, the parties entered into a "Superseding System Agreement," under which BioGenex provided Sentara with an additional i6000 machine, for a total of eight, and Sentara agreed to annually purchase at least $218,000 of supplies for the machines over a five year period beginning January 1, 2007.  *See* Compl., Exh. C ( Instrument and Reagent Supply Binding Agreement ("Superseding System Agreement").

II.     Sentara's Alleged Breach

In May 2009, BioGenex learned that Sentara was using a competitor's instruments and reagent supplies in addition to BioGenex's.  Compl. ¶ 9.  On June 23, 2009, Sentara sent a Notice of Intent to Terminate the Contract for Material Breach to BioGenex, complaining about the performance of BioGenex's machines.  *Id.* ¶ 10.  BioGenex's disputed the performance deficiencies

1   identified by Sentara, but attempted to fix the problems within the thirty-day cure period provided

2   for under the agreements.  BioGenex alleges that during that thirty-day period, Sentara actively

3   interfered with BioGenex's attempts to address Sentara's complaints.  *Id.* ¶ 11.  At some point

4   before the expiration of the thirty-day period, Sentara terminated the contract and ordered BioGenex

5   to remove all of its machines from Sentara's property.  *Id.*

6   III.   Choice of Forum and Jurisdictional Provisions in the Agreements

7          The Superseding System Agreement and the Supply Agreement were the two contracts

8   governing BioGenex and Sentara's relationship at the time of Sentara's alleged breach.  Each of

9   those agreements contains choice of law, forum selection and consent to jurisdictional clauses.

10  Paragraph I of Appendix 2 to the Superseding System Agreement, entitled "GOVERNING LAW,

11  JURISDICTION," relevantly states that:

12         This Agreement shall be governed by the laws of the Commonwealth of Virginia as
           applied to agreement entered into between California residents and executed and
13         performed in California.  Any dispute arising out of or related to this Agreement shall
           be resolved based on the location of conflict and shall be resolved in courts with
14         jurisdiction over said resolution.  [Sentara] hereby consents to the jurisdiction of,
           venue in and process of service from the aforementioned courts.
15
    Superseding System Agreement, Appx. 2, at ¶ I.  The Service Agreement contains different terms
16
    covering similar subject matter.  Paragraph 7 of Appendix 2 to the Service Agreement provides that:
17
           This Agreement shall be governed by the laws of the Commonwealth of Virginia
18         without regard to its conflicts of laws.  Any dispute arising out of or related to this
           Agreement shall be resolved solely in the U.S. District Court for the Northern District
19         of California or in the state courts in Contra Costa County, California, and [Sentara]
           hereby consents to the jurisdiction of the aforementioned courts.
20
    Service Agreement, Appx. 2, at ¶ 7.
21

22  LEGAL STANDARD

23  I.     Motion to Dismiss for Lack of Personal Jurisdiction (Rule 12(b)(2))

24         Plaintiff bears the burden of proving that the court may exercise personal jurisdiction over

25  the defendant.  *Schwarzenegger v. Fred Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  If the

26  jurisdictional challenge is based solely on written papers, plaintiff must make a prima facie showing

27  of jurisdiction.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1129 (9th

28

                                                    3

1   Cir. 2003).  While the plaintiff cannot rely solely on the complaint to establish personal jurisdiction,

2   the court must take uncontroverted allegations as true and resolve conflicts between the facts

3   contained in the parties affidavits in favor of the plaintiff.  *American Tel. & Tel. Co. v. Compagnie*

4   *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  If, however, the court holds an evidentiary

5   hearing on the issue, then the burden on the plaintiff increases to a preponderance of the evidence.

6   *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n.3 (9th Cir. 1993).

7         In a diversity action, the question of whether a federal court can exercise personal

8   jurisdiction over a nonresident defendant "turns on two independent considerations: whether an

9   applicable state rule or statute potentially confers personal jurisdiction over the defendant, and

10   whether assertion of personal jurisdiction accords with constitutional principles of due process."

11   *Data Disc, Inc. v. Syss. Tech. Assoc., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977) (citing *Amba Mktg.*

12   *Syss., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 786 (9th Cir. 1977)).  Federal courts sitting in California

13   may exercise personal jurisdiction over any nonresident defendant to the extent permitted by due

14   process.  *Harris Rutsky*, 328 F.3d at 1129 (citing Cal. Civ. Proc. Code § 410.10).  The California

15   Constitution imposes no greater restrictions on jurisdiction than does the due process clause of the

16   United States Constitution.  *Data Disc*, 557 F.2d at 1286-87 n.3.  Accordingly, due process is

17   satisfied if the defendant has "certain minimum contacts" with the forum state "such that the

18   maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l*

19   *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

20         Personal jurisdiction is a "waivable right."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

21   472 n.14 (1985).  One common way in which parties consent to personal jurisdiction is by

22   "agree[ing] in advance to submit to the jurisdiction of a given court."  *Nat'l Equip. Rental, Ltd. v.*

23   *Szukhent*, 375 U.S. 311, 316 (1964).  "[P]articularly in the commercial context, parties frequently

24   stipulate in advance to submit their controversies for resolution within a particular jurisdiction."

25   *Burger King*, 471 U.S. at 472 n.14.  As long as waivers "have been obtained through 'freely

26   negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due

27   process."  *Id.* (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Where the parties have not agreed to waive the personal jurisdiction requirement, the court

2   may exercise either general or specific jurisdiction over a party.  If a nonresident defendant has

3   contacts with the forum state that are "substantial" or "continuous and systematic," then courts may

4   exercise general personal jurisdiction over the defendant without regard to whether the action arises

5   from the defendant's activities in the forum state.  *Perkins v. Benguet*, 342 U.S. 437 (1952).  If a

6   nonresident defendant's activities within the forum state are less substantial, then courts may still

7   exercise specific personal jurisdiction where the action arises out of or is related to the defendant's

8   particular activities within the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

9   U.S. 408, 414 n.8 (1984).

10  II.   Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer Venue

11  A motion under Rule 12(b)(3) to dismiss for improper venue may be brought to enforce a

12  forum selection clause in a contract.  *Offshore Sportswear, Inc. v. Vuarnet Intern., B.V.*, 114 F.3d

13  848, 851 (9th Cir. 1997).  however, even if a case is properly situated in a particular forum, "[f]or

14  the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

15  civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

16  A motion to transfer venue lies within the broad discretion of the district court, and must be

17  determined on an individualized basis.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.

18  2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  The burden of showing

19  that transfer is appropriate is on the moving party.  *Carolina Casualty Co. v. Data Broad. Corp.*, 158

20  F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (Walker, J.).

21  District courts use a two-step analysis to determine whether a transfer is proper. The

22  threshold question under section 1404(a) requires the court to determine whether the case could have

23  been brought in the forum to which the transfer is sought.  28 U.S.C. § 1404(a); *Hatch v. Reliance

24  Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  If venue would be appropriate in the would-be

25  transferee court, then the court must make an "individualized, case-by-case consideration of

26  convenience and fairness."  *Jones*, 211 F.3d at 498.  Among the factors that a district court may

27  consider in deciding whether a transfer is in the interest of justice are: (1) the location where the

28

5

1   relevant agreements were negotiated and executed; (2) the state that is most familiar with the

2   governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the

3   forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the

4   differences in the costs of litigation in the two forums; (7) the availability of compulsory process to

5   compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9)

6   any forum selection clause; and (10) relevant public policy of the forum state.  *Id.* at 498-99 (citing

7   *Stewart*, 487 U.S. at 29-31). This list of factors is non-exclusive. *See id.*

8   III.      Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

9             Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a

10   defendant for failure to state a claim upon which relief can be granted against that defendant.  A

11   motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*,

12   250 F.3d 729, 732 (9th Cir. 2001).  Dismissal may be based on the lack of a cognizable legal theory

13   or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica*

14   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A motion to dismiss should be granted if a plaintiff

15   fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

16   *Twombly*, 550 U.S. 544, 569 (2007).   "The plausibility standard is not akin to a 'probability

17   requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

18   *Ashcroft v. Iqbal*, ___ U.S. ____, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

19   Allegations of material fact are taken as true and construed in the light most favorable to the

20   nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The court

21   need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic

22   recitation of the elements" of a cause of action.  *Iqbal*, 129 S. Ct. at 1950; *see also Sprewell v.*

23   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18

24   F.3d 752, 754-55 (9th Cir. 1994).  Although "[g]enerally, the scope of review on a motion to dismiss

25   for failure to state a claim is limited to the contents of the complaint," *Marder v. Lopez*, 450 F.3d

26   445, 448 (9th Cir. 2006), a court may consider "material which is properly submitted as part of the

27   complaint," *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th

28

United States District Court
For the Northern District of California

6

1   Cir 1990).  "Determining whether a complaint states a plausible claim for relief . . . [is] a

2   context-specific task that requires the reviewing court to draw on its judicial experience and

3   common sense."  *Iqbal*, 129 S. Ct. at 1950.

4

5   DISCUSSION

6   I.      Personal Jurisdiction

7           Sentara argues that this court cannot exercise personal jurisdiction over Sentara because (1) it

8   has not consented to personal jurisdiction in California and (2) it lacks the minimum contacts with

9   California to support either specific or general personal jurisdiction.  BioGenex concedes that it has

10  not met its burden to establish that Sentara has sufficient minimum contacts with California, but

11  asserts that Sentara consented to personal jurisdiction in California when it entered into the

12  Supreseding System Agreement and the Service Agreement.  Thus, the disposition of Sentara's

13  motion to dismiss for lack of personal jurisdiction hinges entirely on whether Sentara consented to

14  personal jurisdiction in California by agreeing to the terms of the Superseding System Agreement

15  and the Service Agreement.

16          As a preliminary matter, the court must determine whether the two agreements constitute a

17  single contract or represent two separate contracts.  The two agreements evince a clear intent that

18  Virginia law will govern their interpretation, and therefore the court applies Virginia contract law to

19  determine whether the agreements should be treated jointly or separately.  Under Virginia law,

20          [w]here a business transaction is based on more than one document executed by the
            parties, the documents will be construed together to determine the intent of the
21          parties, and [w]here two papers are executed at the same time or contemporaneously
            between the same parties in reference to the same subject matter, they must be
22          regarded as parts of one transaction, and receive the same construction as if their
            several provisions were in one and the same instrument.
23

24  *Parr v. Alderwoods, Inc.*, 268 Va. 461, 467 (2004) (internal quotation marks and citations omitted).

25  Here, the original System Agreement and the Service Agreement were executed on the same day and

    the Service Agreement internally references the System Agreement.  *See* Service Agreement, Appx.
26
    1 ("The Services provided under this Service Plan are performed under the terms and conditions of
27
    the Purchase, Lease, or System Rental and Reagent Agreement between BioGenex and [Sentara].").
28

7

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Although the Superseding System Agreement altered some of the terms in the System Agreement

2  (e.g., the number of instruments provided to Sentara, the value of the yearly mandatory-minimum

3  purchase of supplies, and the dates covered by the agreement) and the parties did not enter into a

4  corresponding Superseding Service Agreement, it seems clear that the parties intended the

5  Superseding System Agreement and the Service Agreement to be construed as a single instrument.

6  In addition, as far as the court can discern, the parties agree that the two instruments at issue in this

7  case form a single contract.  Accordingly, the court must interpret the provisions of the Superseding

8  System Agreement and the Service Agreement as if they were part of a single contractual document.

9         Having reached the conclusion that the two agreements constitute one contract, the court

10 must, if possible, determine the intent of the parties reflected by the choice of law, jurisdictional and

11 venue provisions in the two agreements.

12          Under settled contract principles, Virginia courts resolve contractual vagaries in one of three
         ways.  First, if no patent or latent ambiguities exist, a court should enforce the plain meaning
13       of the contractual language without resort to extrinsic evidence.  Second, if an ambiguity
         exists, a court should still enforce the contract if the real meaning of the ambiguous provision
14       can be discerned from extrinsic evidence.  Third, if an ambiguity renders the alleged
         agreement too indefinite—even after the consideration of extrinsic evidence—for the court to
15       determine the parties' intent, the contract cannot be enforced due to the absence of any
         discernable meeting of the minds.
16
17 *Smith v. Smith*, 43 Va. App. 279, 287 (2004).  "An ambiguity exists when the contract's language is

18 of doubtful import, is susceptible of being understood in more than one way or of having more than

19 one meaning, or refers to two or more things at the same time."  *Virginia Elec. and Power Co. v.*

20 *Norfolk Southern Ry. Co.*, 278 Va. 444, 460 (2009).  An ambiguity can either be "patent"—where

21 "the language of the contract itself reveals that it can be interpreted in more than one way," *id.*—or

22 "latent"—"where language while appearing perfectly clear at the time the contract [is] formed,

23 because of subsequently discovered or developed facts, may reasonably be interpreted in either of

24 two ways," *Galloway Corp. v. S.B. Ballard Constr.*, 250 Va. 493, 503 (1995) (quotations and

25 citation marks omitted).  "In determining whether the disputed terms are ambiguous, [a court]

26 consider[s] the words employed . . . in accordance with their usual, ordinary and popular meaning."

27 *Video Zone, Inc. v. KF & F Props.*, 267 Va. 621, 625-26 (2004).  Further, "[w]hen two provisions of

28 a contract seemingly conflict, if, without discarding either, they can be harmonized so as to

8

**United States District Court**
For the Northern District of California

1    effectuate the intention of the parties as expressed in the contract considered as a whole, this should

2    be done." *Plunkett v. Plunkett*, 271 Va. 162, 168 (2006) (quotation marks and citations omitted).

3          Here, the court is presented with one potential ambiguity—the language of the jurisdictional

4    provision of the Superseding System Agreement—and two potentially conflicting terms in the

5    contract—the different jurisdictional provisions in the Superseding System Agreement and the

6    Service Agreement.  As is discussed above, the Superseding System Agreement and the Service

7    Agreement each contain one provision that addresses choice of law, venue and jurisdiction should a

8    dispute related to either of the agreements arise.  For ease of reference, the court reprints the

9    provisions' language.  The Service Agreement provides that:

10          This Agreement shall be governed by the laws of the Commonwealth of Virginia
            without regard to its conflicts of laws.  Any dispute arising out of or related to this
11          Agreement shall be resolved solely in the U.S. District Court for the Northern District
            of California or in the state courts in Contra Costa County, California, and [Sentara]
12          hereby consents to the jurisdiction of the aforementioned courts.

13    Service Agreement, Appx. 2, at ¶ 7.  The Superseding System Agreement states that:

14          This Agreement shall be governed by the laws of the Commonwealth of Virginia as
            applied to agreement entered into between California residents and executed and
15          performed in California.  Any dispute arising out of or related to this Agreement shall
            be resolved based on the location of conflict and shall be resolved in courts with
16          jurisdiction over said resolution.  [Sentara] hereby consents to the jurisdiction of,
            venue in and process of service from the aforementioned courts.
17
      Superseding System Agreement, Appx. 2, at ¶ I.  The parties agree that the choice of law provisions
18
      in the two agreements are in accord—Virginia law will apply to the resolution of any dispute
19
      between the parties.  The parties dispute, however, whether the two provisions both provide for
20
      venue and Sentara's consent to personal jurisdiction in California.
21
            The Service Agreement speaks clearly and unambiguously to all of the jurisdictional and
22
      venue question raised by Sentara's motion.  Pursuant to that document, any disputes arising out of
23
      the Service Agreement will be resolved solely by courts in California and Sentara consents to
24
      personal jurisdiction in California.
25
            In contrast to the Service Agreement's clarity, the venue and personal jurisdiction provision
26
      of the Superseding System Agreement serves an exemplar of how not to draft the terms of the
27
      contract; to call its nearly unintelligible terms ambiguous is a gross understatement.  BioGenex
28
                                                      9

United States District Court

For the Northern District of California

argues that the second half of the first sentence of the provision—starting with the words "as applied"—evinces an intent that, for the purpose of the entire agreement, the parties will be treated as California residents and performance of the contract will be deemed to have occurred in California.  It follows, BioGenex asserts, that any breach also occurred in California, making the "location of conflict," which, pursuant to the third sentence, is determinative of venue, also in California.   Sentara, however, puts forward a conflicting interpretation of the provision.  Sentara contends that the first sentence speaks only to choice of law, and essentially means that Virginia law will apply "[as it would be] applied to agreement entered into between California residents and executed and performed in California."  Sentara claims that the second and third sentences address the venue and personal jurisdiction for the resolution of any dispute, specifying that "location of conflict" determines where a lawsuit must proceed and where Sentara consents to personal jurisdiction.  They suggest that Virginia, where the alleged breach occurred, is the "location of conflict."

The court holds that neither of the proposed interpretations is satisfactory.  Instead, the court rules that, as a result of the remarkably sloppy drafting of the provision, it possesses no discernible meaning.  The second sentence of the provision is legalese gibberish.  Where is the "location of conflict"?  Is it where the parties are located, where the contract is being performed, or where the alleged breach occurred?  How exactly is a "dispute" resolved "*based on* the location of conflict"? Further, the stipulation that "[a]ny dispute . . . shall be resolved in courts with jurisdiction over said resolution" is a truism.  As a matter of course, only a court with subject-matter jurisdiction over the dispute could resolve the dispute.  Accordingly, Sentara's proposed interpretation—that the "location of conflict" refers to the location of alleged breach or performance, which is Virginia—is inadequate.  BioGenex's view of the provision fares no better.  To hold that the intent of the parties was to create the legal fiction that both entities were California residents performing the contract in California would make the remainder of the jurisdictional provision useless.  For if that were the case, the "location of conflict" would necessarily have to be in California, and California would necessarily be the only appropriate venue.  Because neither proposed interpretation, nor any other

United States District Court

For the Northern District of California

1   interpretation of which the court can conceive, provides any logical meaning to the provision as a

2   whole, the court holds that the jurisdictional provision of the Superseding System Agreement is

3   ambiguous.

4        A finding of ambiguity has two consequences.  First, it entitles the parties to introduce parol

5   evidence to illuminate their intent in entering into the term.  *See Nextel Wip Lease Corp. v.*

6   *Saunders*, 276 Va. 509, 519 (2008).  This principle, however, is of no import in the instant dispute,

7   as neither party has submitted any parol evidence.  The second principle, that the ambiguous

8   contractual provision be construed against the drafter (in this case BioGenex), is also of no help.  *See*

9   *Donnelly v. Donatelli & Klein, Inc.*, 258 Va. 171, 183 (1999).  Because the court has already held

10  that the provision is nonsensical, i.e., it possesses no discernable meaning at all, there is no possible

11  way to construe it against (or for) the drafter.  The court reaches this conclusion despite the long-

12  standing principle that "[n]o word or clause in a contract will be treated as meaningless if a

13  reasonable meaning can be given to it."  *Heron v. Trans. Cas. Ins. Co.*, 274 Va. 534, 539 (2007)

14  This is the exceedingly rare case in which there is no way to provide a *reasonable* meaning to the

15  provision without rendering some other portion of the provision meaningless.  Consequently, the

16  court strikes the jurisdictional provision from the Superseding System Agreement.

17       Having excised the jurisdictional provision from the Superseding System Agreement, the

18  contract as a whole now contains a single, clear intent as to the location of venue and the

19  accompanying consent to personal jurisdiction.  By entering into the Service Agreement, Sentara

20  explicitly agreed that any disputes arising out of or related to the contract would be venued in either

21  this court or the Superior Court for the County of Contra Costa.  Sentara also "consent[ed] to the

22  jurisdiction of" either of those courts.  Accordingly, because Sentara consented to personal

23  jurisdiction in this court, Sentara's motion to dismiss for lack of personal jurisdiction is DENIED.

24  II.    Motion to Dismiss for Improper Venue

25       Sentara's motion to dismiss for improper venue, under Federal Rule of Civil Procedure

26  12(b)(3), was predicated entirely on the potential ambiguities in the forum selection clauses in the

27  two agreements.  Sentara concedes that if the contract contains an unambiguous forum selection

28

11

1  clause, that clause is valid. *See* Docket No. 17 (Sentara's Reply) at 5 ("Sentara does not argue that

2  the forum selection clause should not be upheld because it was induced by fraud, or based on issues

3  of public policy."). Having struck the forum selection clause from the Superseding System

4  Agreement, the forum selection clause in the Service Agreement is the governing provision in the

5  contract. As a result, this court is a proper venue for this litigation. Accordingly, Sentara's motion

6  to dismiss for improper venue is DENIED.

7  III.    Motion to Transfer Venue

8      Sentara argues that even if this court is a proper forum for this action, the court should

9  exercise its discretion to transfer the case to the Eastern District of Virginia. To determine whether

10  transfer is proper, the court must, as a threshold matter, determine whether the case could have been

11  brought in the Eastern District of Virginia. Plaintiff asserts that the Eastern District could not

12  resolve this dispute because it would not have personal jurisdiction over plaintiff. Personal

13  jurisdiction, however, is only an issue for defendants, not plaintiffs; a plaintiff who institutes a suit

14  cannot seek to avoid pursuing the suit in an alternative forum by arguing that the proposed forum

15  lacks personal jurisdiction over the plaintiff. Plaintiff also contends that the case could not have

16  been brought in Virginia because of the forum selection clause in its contract with Sentara, which

17  specifies that any dispute would be resolved in a California forum. As is discussed below, however,

18  a forum selection clause is only one factor, albeit a "significant [one] that figures centrally in the

19  district court's calculus," that a district court must consider in resolving a motion to transfer.

20  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Accordingly, the court holds that this

21  action could have been brought in the Eastern District of Virginia.

22      As a second step in the analysis, the court must weigh the various, non-exclusive factors

23  delineated in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The court

24  addresses each in turn.

25      A.    The Location Where the Relevant Agreements Were Negotiated and Executed

26      As far as the court can discern, the contract at issue in this case was primarily negotiated in

27  Virginia, although it is possible that a representative from BioGenex executed the contract in

28

12

California.  *See* Docket No. 14-1 (Sheldon Dec.) ¶¶ 4-6 (declaring that David Sheldon, BioGenex's Chief Financial Officer, executed the agreements at issue in this case, and that Sheldon works in California).  In general, however, this factor would favor transfer to Virginia.

B.      The State that Is Most Familiar with the Governing Law

This factor strongly favors transfer to Virginia.  The parties clearly agreed that Virginia law would apply to the resolution of any dispute that arose out of their contract.  Although this court is capable of applying Virginia contract law, a district court in Virginia would be considerably more familiar with the relevant law.

C.      The Plaintiff's Choice of Forum

"In general, a plaintiff's choice of forum carries substantial weight in a motion to transfer venue," especially where, as here, the plaintiff has some connection to the forum and the action is not a class action.  *Moore v. C.R. England, Inc.*, No. 09-1841 SC, 2009 WL 3458303, at 2 (N.D. Cal. Oct 23, 2009).  Accordingly, this factor strongly supports keeping this action before this court.

D.      The Respective Parties' Contacts with the Forum

This factor supports neither transfer nor retention.  BioGenex, which is headquartered in San Ramon, California, has strong connections with the Northern District.  Sentara, which is headquartered in Virginia, does not.

E.      The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

This factor favors transfer, as, according to the complaint, the vast majority of conduct giving rise to this dispute occurred at Sentara.

F.      The Difference in the Costs of Litigation in the Two Forums

This factor supports neither transfer nor retention.  Whether this case is tried in California or Virginia, one of the parties will be forced to litigate away from their state of residence, requiring them to incur some travel expense.  From the parties' moving papers, it appears that a slightly higher quantity of percipient witnesses are located in Virginia.  At the same time, the difference in costs is not appreciable, especially considering that both BioGenex and Sentara are large corporations capable of absorbing the cost of litigation.

13

United States District Court

For the Northern District of California

G.    The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

This factor weighs slightly in favor transfer to Virginia.  BioGenex has non-party witnesses located both in California and outside of California.  In contrast, Sentara contends that all of its non-party witnesses either reside or work in Virginia.  Neither party has signified that this factor should feature prominently in the court's analysis.

H.    The Ease of Access to Sources of Proof

BioGenex asserts that the machines at issue in this case are now located in California.  It claims that the remainder of the relevant evidence is documentary, and thus favors neither California nor Virginia.  Sentara asserts that the majority of witnesses and documents are located in Virginia, but admits that "[t]his factor is not hugely significant to either party."  Docket No. 10 (Sentara's Mot.) at 17.  Accordingly, this factor weighs slightly against transfer, but tilts the scales very little.

I.    Any Forum Selection Clause

This factor heavily favors denying the motion to transfer venue.  As is discussed at length above, the contract between BioGenex and Sentara contains a valid and unambiguous forum selection clause, specifying that any litigation must be brought in this court or in the Superior Court for the County of Contra Costa.

J.    Public Policy of the Forum State

Neither party has identified any public policy of the state of California that would have any bearing on whether this case should be brought in California or Virginia.  Accordingly, it weighs neither in favor or against transfer.

K.    Analysis

In sum, four of the ten factors weigh in favor of transfer, while three favor denying Sentara's motion.  Although the quantity of factors favors transfer, the court holds that transfer would not be appropriate in this case.  Sentara has not demonstrated that "the convenience of parties" or "the interest of justice" would be better served in Virginia in a manner sufficient to disrupt the parties' choice of forum expressed in the forum selection clause.  Accordingly, Sentara's motion to transfer this action to the Eastern District of Virginia is DENIED.

15

IV.    Motion to Dismiss for Failure to State a Claim

Sentara also moves for this court to dismiss BioGenex's third, fourth and fifth claims for relief, which allege that Sentara breached the implied covenant of good faith and fair dealing. Sentara argues that Virginia does not recognize a breach of the implied covenant as an independent cause of action, but rather only as a subset of breach of contract.  Sentara asserts that therefore, claims three through five are duplicative of counts one and two, which already allege breach of the Superseding System and Service Agreements.

Sentara is correct that no cause of action for tortious violation of the implied covenant exists in Virginia.  *See Charles E. Brauer Co., Inc. v. NationsBank of Va.*, 251 Va. 28, 33 (1996).  At the same time, in Virginia, "every contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 451 (E.D. Va. 2009) (citing *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir.1998)).[1]  The implied covenant cannot, however, "be used to override or modify explicit contractual terms."  *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir.1994); *see Ward's Equipment v. New Holland N.A.*, 254 Va. 379, 385 (1997) ("[An implied covenant of good faith and fair dealing] cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist."). Accordingly, "the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant."  *Enomoto*, 624 F. Supp. 2d at 451.  A breach of the implied covenant generally occurs when a party to a contract exercises its contractual discretion in bad faith.  *See Virginia Vermiculite*, 156 F.3d at 542; *Clemons v. Home Savers, LLC*, 530 F. Supp. 2d 803, 812 (E.D. Va. 2008). Therefore, although breach of the implied covenant is a contractual, not a tortious, cause of action, conduct that violates the implied covenant must, as a matter of law, be different from conduct that gives rise to a traditional breach of contract claim.

Such is the case in the instant matter.  In its first and second claims for relief, BioGenex alleges that Sentara breached the explicit terms of the Superseding System and Service Agreements. In the third, fourth and fifth claims for relief, BioGenex avers that Sentara exercised its discretion

16

**United States District Court**
For the Northern District of California

1  under the terms of the contract, but did so in bad faith. *See* Compl. ¶ 25 (alleging, in claim for relief

2  three, that Sentara dishonestly blamed BioGenex for problems with the instruments that arose

3  because of Sentara's failure to properly maintain the instruments); *id.* ¶ 31 (alleging, in claim for

4  relief four, that Sentara disingenuously interfered with BioGenex's attempts to cure the breach of

5  contract complained of by Sentara); *id.* ¶ 36 (alleging, in claim for relief five, that Sentara's

6  termination of the contract was done in bad faith).  These allegations are not duplicative of the

7  allegations in claims for relief one and two.  Sentara has not identified and the court has not been

8  able to locate a single case in which a federal court dismissed an adequately pled claim for breach of

9  the implied covenant simply because it was included in a complaint as a separate claim for relief.

10  Accordingly, Sentara's motion to dismiss BioGenex's third, fourth and fifth claims for relief for

11  failure to state a claim upon which relief could be granted is DENIED.

12

13  <u>CONCLUSION</u>

14        Defendant Sentara's motion to dismiss for lack of personal jurisdiction, motion to dismiss for

15  improper venue, motion to transfer venue, and motion to dismiss for failure to state a claim upon

16  which relief can be granted are DENIED.  Defendant shall file an answer 30 days from the date of

17  the filing of this order.

18        IT IS SO ORDERED.

19

20

21

22  Dated: 3/11/2010                                   _____

23                                                    MARILYN HALL PATEL
                                                      United States District Court Judge
                                                      Northern District of California

24

25

26

27

28

17

**ENDNOTES**

1.  Sentara misleadingly cites to *Sneed v. American Bank Stationary Co.*, 764 F. Supp. 65, 67 (W.D. Va. 1991), for the proposition that the "[b]lack letter law of Virginia does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing." Sentara's Mot. at 18. Although *Sneed* could have been clearer on the issue, it, and the cases it cites to, hold only that the covenant is not implied into employment contracts, especially at-will employment contracts.